UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRUNO RAMIREZ
      Petitioner           10 Cv. 2386 (RPP)
                      07 Cr. 135 (RPP)

   - against -
                       **OPINION AND**
                        **ORDER**
UNITED STATES,
      Defendant-Respondent
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

   The Petitioner, Bruno Ramirez ("Petitioner"), filing pro se, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He contends that his court-appointed attorneys: 1) failed to explain to Petitioner the Government's plea offer; 2) failed to advise Petitioner whether to accept or reject the plea offer; and 3) failed to argue during his sentencing that Section 5K2.20 of the United States Sentencing Guidelines ("USSG") gives the Court discretion to determine whether the conduct of a defendant constitutes aberrant behavior. Petitioner requested an evidentiary hearing. His petition is denied for the reasons stated herein.

**I. Background**

   On October 18, 2006, Petitioner, a livery cab driver, was arrested and charged with participating in a conspiracy to commit money laundering involving approximately $500,000 in cash in violation of 18 U.S.C. § 1956(h) and with participating in a conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine in violation of 21 U.S.C. § 846. Julie Clark, Esq. was Petitioner's court-appointed CJA Panel counsel throughout the pre-trial proceedings and trial. At

sentencing, he was represented by Michael Hurwitz, Esq. who was also appointed from the CJA Panel.

Petitioner filed an affidavit in support of his motion ("Pet. Aff."). In it, he states: (1) that Julie Clark did not explain that he "was facing a sentence of 120 months" if he went to trial; (2) that the government did not offer an "open plea without agreement" to him; and (3) that he only learned about the possibility of safety valve relief on the day of his sentencing. (Id. ¶¶ 5, 8, 10.)

Clark filed an affirmation, dated June 13, 2010, in response to the Petitioner's charge of ineffective assistance of counsel, in which she states, "I spoke to [Petitioner] on numerous occasions concerning the long prison sentence he was facing," always with the services of a Spanish interpreter. (Clark Affirmation dated June 13, 2010 ("Clark Aff.") at ¶ 7a). She affirms that Petitioner was adamant that he was not guilty. (Id. ¶ 7b.) Clark further states that she and Petitioner attended a reverse proffer session with the Government in which the Assistant United States Attorney ("AUSA") and an IRS agent presented the evidence against Petitioner and made a plea offer that Clark relayed to Petitioner, but that Petitioner adamantly refused to accept any plea that was offered by the Government. (Id.)

Clark also states that, in addition to an audio tape that had a conversation in Spanish between Petitioner and the undercover officer when he delivered a package containing approximately $500,000 in cash, a few days before the scheduled trial date the Government informed her they had found a videotape that had Petitioner on it, in which the agent can be seen picking up a package. (Id. ¶ 7c.) She states she took the videotape home. (Id.) Clark states that, after viewing the tape, she "again discussed the same plea

2

offer with [Petitioner] and informed him I believed it was in his best interest to take the plea offer that the Government offered. The Spanish interpreter was present. We met on numerous occasions and each time I informed [Petitioner] of the benefits of the plea offer. I also informed the mother of his children of the offer and she wanted him to plead guilty. [Petitioner] refused to consider the offer each and every time." (Id. ¶ 7d).

AUSA Glen McGorty has also filed a declaration dated June 29, 2010 ("McGorty Decl.") in which he corroborates Clark's statement that after the trial date adjournment the Government provided Clark and Petitioner with an overview of its case against Petitioner and the likelihood of his conviction at trial. McGorty states that "the Government encouraged Petitioner to accept a favorable plea offer from the Government explaining that, after conviction by a jury, Petitioner would be likely facing a significant sentence, including a 10-year mandatory minimum term, if convicted of a b-1-A narcotics trafficking conspiracy," and that Petitioner "adamantly professed his innocence and stated he never delivered a package without a passenger." (McGorty Decl. ¶ 3.) Accordingly, Petitioner's recollection that he was not advised that he could face a ten year mandatory minimum is rebutted.[1]

AUSA McGorty further affirms that he learned of the videotape of Petitioner at the Hess Station in Queens with the undercover agent when speaking with a retired police officer who had conducted surveillance. (Id. ¶4.) As a result of this new evidence, the government requested an adjournment of the trial date, which the Court granted so that

---

[1] In any event, Petitioner claims in his petition that he was never advised that he was facing a ten year mandatory minimum sentence means that the potential of this mandatory minimum sentence did not force him to go to trial. Accordingly, assuming Petitioner to be correct despite the contrary proof, he has failed to show the prejudice to his defense that is required by Strickland. It is apparent also that, despite his claims of receiving no plea offer, multiple plea offers were conveyed to him by Clark and by McGorty. See discussion infra.

3

the defense could consider a change of plea. (Id.)  The Government also arranged for Clark and Petitioner to view the surveillance tape in its offices, after which Petitioner continued to insist he was not guilty and that he would not plead guilty.  (Id. ¶5.)

The sworn statements of Clark and AUSA McGorty are corroborated by the transcript of a pretrial conference held on October 31, 2007 in which Clark stated, with Petitioner and a Spanish interpreter present, that the Government had relayed "offers in connection with this case concerning pleas and possible scenarios." (Transcript of Conference dated October 31, 2007 ("Oct. 31 Tr."), at 8.)  Clark further stated that she had "gone over all of those with Mr. Ramirez . . . on Monday with my interpreter." (Id.) Later during that same conference, after the Court had adjourned the trial date to allow the Defendant to view the surveillance tapes and to reconsider whether to plead guilty, AUSA McGorty stated: "the plea offers we offered, we would extend them as well, which are more beneficial to the defendant than what he would face at conviction.  We would extend them a week, to the middle of next week." (Id., 16.)

On November 19, 2007, after a six-day trial, a jury found Petitioner guilty of both counts – money laundering under 18 U.S.C. §1946(h) and narcotics conspiracy under 21 U.S.C. §846.  On May 20, 2008, although the government sought a mandatory minimum sentence of ten years pursuant to United States v. Chalarca, 95 F.3d 239 (2d Cir. 1996), the Court sentenced Petitioner to a sixty-three month term of incarceration based on the jury's finding that the government had not sustained its burden to show that Petitioner was aware of the amount of cocaine involved.  The Court determined that the base offense level was 24, to which the Court added two points under 18 U.S.C. § 1956. USSG § 2S1.1(b)(2)(B).  (Transcript of Sentencing dated May 20, 2008 ("May 20 Tr."),

4

78-79.) The Court declined to make a deduction for acceptance of responsibility, "because this case went to trial." (Id.) Furthermore, the Defendant decided not to make a proffer, despite having been advised of that opportunity. (Id., 78.) The Defendant had no prior criminal convictions, placing him within Criminal History Category I. (Id., 79.) The above calculations resulted in a guidelines sentence of between sixty three and seventy eight months. (Id.) The Court sentenced the Defendant to sixty-three months in view of his lack of a prior arrest record.

On February 17, 2010, Petitioner filed this motion pursuant to 28 U.S.C. § 2255 to vacate his sentence based upon ineffective assistance of counsel.

**II. Discussion**

**A. Applicable Law**

Petitioner's claim for ineffective counsel "presumes either the absence of counsel, or some insufficiency in the lawyer who performed (or failed when needed to perform) some duty in which effectiveness had a bearing on the outcome." Triana v. United States, 205 F.3d 36, 43 (2d Cir. 2000). In order to prove ineffective assistance of counsel, Petitioner must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 678 (1984). Petitioner bears the burden of proof by a preponderance of the evidence and must set forth "detailed and controverted issues of fact." Newfield v. U.S., 565 F.2d 203, 207 (2d Cir. 1977). The Second Circuit has held that a hearing is only required where a petitioner meets this burden and where the record before the Court does not conclusively show that the petitioner is entitled to relief. Id.

**B. Failure to Communicate the Plea Offers and Advise Petitioner to Plead Guilty**

Petitioner contends that he received ineffective assistance of counsel because Clark never advised him to plead guilty. (Pet.'s Br. at 4.) Petitioner also asserts that he was not aware that "by going to trial, [he] was facing a sentence of 120 to 151 months." (Id. at 3.) However, his claims, which are stated in general and conclusory terms, are controverted not just by the sworn affidavits of the prosecutor and defense counsel in this case, but also by the official transcripts of court proceedings. Magistrate Judge James C. Francis, at Petitioner's initial court appearance on October 18, 2006, told Petitioner: "The complaint charges you with violation of 18 U.S.C. § 1956(h) which makes it an offense to conspire to engage in money laundering. If convicted, you'd be subject to a term of imprisonment of up to twenty years." (Transcript of Arraignment before Judge Francis dated Oct. 18, 2006 at 5.) Thus, he had clearly been advised that he could be sentenced to more than 120 to 151 months.

Most importantly, Petitioner's contentions in his petition that his counsel failed to advise him of the benefits of a guilty plea are belied by the transcript of the pretrial conference held on October 31, 2007, at which the parties discussed in Mr. Ramirez's presence with an interpreter that Ms. Clark had gone over with him plea offers from the government, which had been extended one week, and also the sentencing advantages associated with a plea, namely that pleading guilty would entitle the Defendant to a three-level reduction under the sentencing guidelines.[2]  (Oct. 31 Tr., at 7-8, 15-16.)

---

[2] Petitioner's claim that he was not offered the same plea offer as his co-defendants (Ramirez Aff. ¶ 5) does not show ineffectiveness of counsel because it is not relevant. The persons he refers to as "co-defendants" were accused separately and convicted of the crimes alleged in Count One or in Count Two, whereas Petitioner was accused and convicted on both counts, necessitating a higher sentence and a higher plea offer.

6

Because the transcript of the October 31, 2007 conference establishes that Petitioner was present with an interpreter during the discussion in Court of the alternative of pleading guilty and that Petitioner was made aware of the benefits of pleading guilty, and because Ms. Clark has affirmed that she advised the Petitioner about the benefits of the plea offered but that he was adamant that he was not guilty,[3] Petitioner has not made a sufficient showing to hold an evidentiary hearing on the issue of whether Clark's representation fell below an "objective standard of reasonableness" and that her deficient performance prejudiced him. See Strickland, 466 U.S. at 687. In view of these facts so inconsistent with Petitioner's allegations, the Petitioner "has failed to raise a plausible ineffectiveness claim," regarding his attorney's performance in plea negotiations and "there is no need for further factual development." United States v. Stantini, 85 F.3d 9, 20 (2d Cir. 1996). Rather, the record "conclusively show[s] that petitioner is entitled to no relief." 28 U.S.C. § 2255(b). Accordingly, his first claim of ineffective assistance of counsel is thus without merit.

## C. Failure to Request Downward Departure[4]

Petitioner contends that his counsel was ineffective at sentencing for failing to request a downward departure for "aberrant behavior."[5] USSG §5K2.20(b) provides that the court "may depart downward [for aberrant behavior]…only if the defendant

---

[3] The Court notes that on May 14, 2010, while this petition was pending, Petitioner notified AUSA McGorty that he had confidential information about the individual responsible for the money found on his person. Exhibit C to McGorty Decl.

[4] The Government alleges that because Petitioner failed to seek a downward departure at sentencing, Petitioner has waived his right to seek departure and may not raise the claim now. (Opposition Brief at 23-24.) This argument is without merit. Petitioner has argued ineffective counsel precisely because he alleges that his attorney did not raise the downward departure argument at sentencing.

[5] Following his conviction, Petitioner requested new counsel. Michael Hurwitz was appointed as Petitioner's attorney for sentencing. Nonetheless, Petitioner's brief only refers to Julie Clark in its arguments about ineffective assistance. (Pet.'s Br. at 13). The Court assumes that in arguing ineffective assistance at sentencing, Petitioner intended instead to refer to Hurwitz.

committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."

At sentencing, Petitioner's new counsel, Hurwitz, told the Court, in relevant part, the following:

> I do feel at the very least there's certainly reasons that the Court at the end of the day may determine that a reasonable sentence in this case is something substantially less than the advisory guidelines based upon everything the Court knows from the probation report and having sat here during the course of the trial. . . .
>
> I think that when one looks at a defendant at the time of sentencing, it's fair and proper, and under the guidelines, to look at the defendant as a whole person and not simply focusing on his criminal conduct which he's going to be sentenced for.
>
> And looking at that, this defendant, Mr. Ramirez. . . .has an awful lot going for him that speaks on his behalf that would indeed give the Court a reason to go substantially lower. He's a person that's never been before a Court before. He's a person that started working, at least in the taxi industry, as a driver back in 1992 until his arrest in this case, a period of approximately 15 years. . . .
>
> And when Mr. Ramirez was arrested, [he] was providing financial support for [his two] children and of course for his child that he had with Ms. Pena, who is age ten. . . .
>
> I think the Court can clearly see in this case Mr. Ramirez has for the most part led a law-abiding life, has worked hard, supporting his family, and building a relationship with his family members who he'll be able to go back to when released from incarceration.

(May 20 Tr., 68-71.) Counsel for Petitioner may not have used the words "aberrant behavior" during his sentencing presentation, but at sentencing he made a coherent and thorough argument for a variance or downward departure, utilizing the aberrant behavior criteria contained in USSG § 5K2.20(b). Since United States v. Booker, 543 U.S. 220 (2005), arguments for variances for aberrant behavior or for extraordinary family

8

circumstances are regularly presented as grounds for sentence variances under 18 U.S.C. § 3553, instead of as grounds for departure under the guidelines. Thus, counsel's representation of Petitioner at the sentencing did not fall below an "objective standard of reasonableness," nor did his performance prejudice Petitioner. See Strickland, 466 U.S. at 678. Petitioner's second claim of ineffective counsel is therefore without merit.

### III. Conclusion

For the reasons stated herein, the petition is denied.

IT IS SO ORDERED.

Dated: New York, New York

September 2, 2010

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Order have been sent to:**

**Counsel for Government:**
Glen G. McGorty
U.S. Attorney's Office, SDNY (St. Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212) 637 – 2505
(212) 637 – 0086 (fax)

**Defendant:**
Bruno Ramirez
No. 59442-054
CI Moshannon Valley, Unit A-3
551 I Cornell Drive
Philipsburg, PA 16866